IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Jeffrey Braithwaite, et al.,                                              Case No. 3:08CV01771

            Plaintiffs

   v.                                                                                    ORDER

Department of Homeland Security, Secretary of,

            Defendant


This is an employment discrimination case brought by two former Transportation Security

Administration (TSA) employees at the Toledo, Ohio, Express Airport (Toledo Airport). Plaintiffs

Jeffrey Braithwaite and Bruce Schneider seek money damages and injunctive relief from defendant

Janet Napolitano in her official capacity as Secretary of the Department of Homeland Security,

which directs TSA.

Plaintiffs claim that defendant discriminated against them in violation of the Age

Discrimination in Employment Act (ADEA),[1] 29 U.S.C. §§ 621 et seq., by: 1) passing over them

for promotion; 2) reducing their duties; 3) denying their transfer requests during a widespread

reduction in force (RIF); and 4) terminating them during the RIF.

---

[1] Defendant protests that plaintiffs' claims warrant dismissal because they pled them under
Title VII, which does not prohibit age discrimination, instead of under the ADEA, which does.
While defendant is correct in its statement of the law, see *Briggs v. Potter*, 463 F.3d 507, 514 n.2
(6th Cir. 2006), I find that plaintiffs' various references to the ADEA suffice to identify that statute
as the basis of their claims. *See* Doc. 1 ¶¶ 8, 21, 22, 41.

Plaintiffs also claim that defendant retaliated against them in violation of the ADEA by: 1) reducing their duties; 2) denying their requests to transfer positions; and 3) terminating them. Braithwaite also separately claims that defendant retaliated against him by misclassifying his rehire status.

Jurisdiction is proper under 28 U.S.C. §§ 1331 and 1343.

Pending is defendant's motion for summary judgment under Fed. R. Civ. P. 56, or in the alternative motion to dismiss under Fed. R. Civ. P. 12(b)(6). [Doc. 24].

For the following reasons, defendant's motion shall be granted.

## Background

### I. TSA's Hub-and-Spoke Plan

Beginning in July, 2005, TSA implemented a "hub-and-spoke" plan to reorganize and reduce some of its compliment of Federal Security Director (FSD) staff,[2] some of whom worked at major airports (hubs) and some of whom worked at smaller surrounding airports (spokes). TSA decided that hubs would provide administrative support and services to their spokes. TSA's goals were to centralize administrative staff and leadership at hub airports, eliminate administrative redundancy, improve workflow processes, standardize airport organizational structures, and redeploy staffing more efficiently. The hub-and-spoke plan had a target completion date of September 30, 2006.

For northern Ohio, Cleveland Hopkins International Airport was the hub and the Toledo, Akron-Canton Regional and Youngstown-Warren Regional Airports were the spokes. TSA, through its head official in the region, FSD Michael Young at the Cleveland Airport, designated a certain

---

[2] FSD staff includes all non-screener TSA positions.

2

number of excess positions at the Toledo, Youngstown and Akron-Canton Airports for elimination. Plaintiffs' positions were designated as such excess positions.

Under the hub-and-spoke plan, displaced employees had no right or priority of transfer to other TSA positions, whether open or occupied.

## II. Jeffrey Braithwaite

Jeffrey Braithwaite was born in 1957. He was forty-eight at the time of the pertinent events.

Prior to working for TSA, Braithwaite worked as Regional Air Freight Director for a major cargo company.

Braithwaite joined TSA on April, 14, 2002.

From April 14, 2002, until October 20, 2002, Braithwaite served as a Supervisory Transportation Security Screener, Pay Band G, for TSA at the Toledo Airport.

From October 20, 2002, until his termination on September 30, 2006, Braithwaite occupied the position of Scheduling Operations Officer, Pay Band I, at the Toledo Airport.

In May, 2003, Braithwaite attended a TSA Aviation Security Inspector training course in Oklahoma City, Oklahoma.

In October, 2003, Braithwaite began a six-month detail as an Aviation Security Inspector at the Toledo Airport.

According to Braithwaite, on January 29, 2006, he was not selected as a Cargo Aviation Inspector. He states that the position was not available publicly, but only through a reassignment request sent by email  (displacement email) to all FSDs regarding employees to be displaced in the hub-and-spoke plan. Braithwaite states he does not know whom TSA selected to fill these positions. He claims to have heard from friends that persons younger than he got the jobs

Braithwaite also protests that his pay did not increase at this time. It is unclear what Braithwaite bases this protest on: his non-selection for a Cargo Aviation Inspector position or general concerns about being paid less than other Toledo Airport TSA employees. Braithwaite names three employees who allegedly received pay increases: James Oswald and Robert Chromik, Screening Managers, and Jan Jagodzinski, Human Relations Specialist. Braithwaite alleges that Oswald received an 8% pay raise (and Pay Band jump from H to I), Chromik received a 10% pay raise (and Pay Band jump from H to I), and Jagodzinski received a 10% pay raise (and Pay Band jump from H to I), and a $1,800 cash award.

At the end of February, 2006, TSA posted online two Transportation Security Specialist: Cargo Aviation Security Inspector (CASI) positions at the Cleveland Airport.

On March 6, 2006, and based on his non-selection for either of these positions, Braithwaite contacted an Equal Employment Opportunity (EEO) counselor and initiated the process to file an EEO complaint for age discrimination.

On April 2, 2006, Rickey Jones transferred from one Transportation Security Specialist position to another. Jones's age is not clear from the record.

Braithwaite subsequently claims that he applied for the vacant Airport Security Inspector positions on April, 11, 2006. An email on that date from John Bartolomeo, head of TSA at the Toledo Airport, mentions, *inter alia*, Bartolomeo's confusion that Braithwaite was not on the certified list for an Airport Security Inspector position.

On June 13, 2006, Braithwaite filed an EEO complaint based on his non-selection for the CASI positions.

Braithwaite states that he received notice on June, 20, 2006, that his job was to be eliminated in the hub-and-spoke plan on September 30, 2006.

4

Beginning in July, 2006, Braithwaite's duties were reduced.

In mid-July, 2006, TSA posted online an available Cargo Transportation Security Specialist position at the Cleveland Airport.

On July 26, 2006, Braithwaite received official notification that he would be displaced as of September 30, 2006.

On August 6, 2006, John Hatzadony transferred from being a Program Analyst to a Transportation Security Specialist at the Cleveland Airport. Hatzadony's age is not clear from the record.

On September 2, 2006, Hatzadony resigned from his position.

As of September 30, 2006, Braithwaite was displaced and lost his job at TSA.

On March 13, 2008, Braithwaite requested and received a final agency decision on his EEO complaint, closing the case so as to pursue this litigation.

### III. Bruce Schneider

Bruce Schneider was born in 1951. He was fifty-three at the start of the pertinent events.

Before working for TSA, Schneider for years was a law enforcement officer in Detroit and at the Wayne County, Michigan, Airport Metropolitan Police Department. During these jobs, he supervised over one hundred individuals and managed a significant budget.

Schneider joined TSA in October, 2002, as Assistant Federal Security Director (AFSD), Pay Band I, for the Toledo Airport.

During this time, FSD Robert Turay directed the TSA staff at the Toledo Airport. Under Turay, the Toledo Airport TSA suffered from significant disarray and dysfunction. Schneider eventually complained about Turay to TSA headquarters in Washington, DC, which launched a Cleveland-based inquiry into conditions at the Toledo Airport.

5

In September 2004, Turay left TSA, and the FSD position at the Toledo Airport became open. TSA posted this position as publicly open for applications. In the interim, Schneider became the acting FSD.

Schneider applied for the permanent FSD position in November, 2004. He, along with approximately nine other applicants, made the "qualified list." He was not, however, among the five individuals who made the "best qualified list" and interviewed for the position. The best qualified list included John Bartolomeo and Rickey Jones. The only person to receive a personal interview was Bartolomeo, who flew to Cleveland for his interview. Bartolomeo was selected for the position.[3]

On May 30, 2005, Bartolomeo became the Deputy Federal Security Director (DFSD)[4] at the Toledo Airport and took over managerial responsibilities from Schneider.

On June 28, 2005, Schneider contacted an EEO counselor and initiated the process to file an EEO complaint for non-selection based on age discrimination.

On October 25, 2005, Schneider filed his EEO complaint.

Over the course of 2005 and 2006, Schneider's duties were reduced.

At some point during 2005 or 2006, Schneider claims he was not allowed to transfer to available Program Analyst or Regulatory Agent positions at the Cleveland Airport. He, however, states that he never saw any such positions advertised and does not allege that he applied for them.

---

[3] Bartolomeo's experience included several administrative and managerial positions at TSA headquarters. He also had extensive field experience from working at Dulles International Airport outside of Washington, DC. Several other TSA members and an FSD recommended him for the position.

[4] At some point during the hiring process, the FSD position became downgraded to a DFSD position.

On March 16, 2006, Schneider filed an amended EEO complaint adding an allegation of retaliation for filing his initial EEO complaint. Schneider claimed that the retaliation consisted of a reduction of his duties and refusal to allow him to transfer positions.

On July 27, 2006, Schneider received official notification that he would be displaced as of September 30, 2006.[5]

As of September 30, 2006, Schneider was displaced and lost his job at TSA.

On February 21, 2008, Equal Employment Opportunity Commission (EEOC) Administrative Judge Davidson Momah denied Schneider's age discrimination and retaliation claims against TSA.

## Standard of Review

I consider defendant's motion as one for summary judgment, because the parties have submitted – and I have examined – materials outside the pleadings. Fed. R. Civ. P. 12(d). I have broad discretion to do so, especially where the plaintiff has an opportunity to respond because the defendant files its motion under both Rules 12 and 56. *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000).

A party is entitled to summary judgment on motion under Rule 56 when the opposing party fails to show the existence of an essential element for which that party bears the burden of proof. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 322 (1986).

The moving party must first show the absence of a genuine issue of material fact. *Id.* at 323.

Once the moving party meets that initial burden, the non-moving party "must [then] set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). The non-moving party cannot rest on its

---

[5] It is unclear when exactly Schneider received unofficial notification that his position would be eliminated in the hub-and-spoke plan.

pleadings or merely reassert its previous allegations. Rule 56(e) "requires the non[-]moving party to go beyond the [unverified] pleadings" and present evidence in support of its position. *Celotex Corp.*, *supra*, 477 U.S. at 324.

In deciding a motion for summary judgment, a court accepts the non-moving party's evidence as true and construes the evidence in the light most favorable to the non-moving party. *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). A court shall grant summary judgment only if the materials offered in support of the motion show that there is no genuine issue as to any material facts, and that the moving party is thus entitled to summary judgment as a matter of law. *Celotex Corp.*, *supra*, 477 U.S. at 323.

## Discussion

## I. Discrimination

Under the ADEA, federal agencies may not discriminate based on age against individuals forty years old or older. 29 U.S.C. § 633a(a). Because the ADEA explicitly allows federal employees to sue the United States government for age discrimination, 29 U.S.C. § 633a, Congress has waived the government's sovereign immunity as to such claims. *Gomez-Perez v. Potter*, 553 U.S. 474, 128 S. Ct. 1931, 1942-43 (2008).[6]

---

[6] Defendant argues that Braithwaite has not exhausted his claims, but there is no exhaustion requirement for federal employees under the ADEA. § 633a(c); *see also Langford v. U.S. Army Corps of Eng'rs*, 839 F.2d 1192, 1193 (6th Cir. 1988). Plaintiffs, moreover, have satisfied the prerequisites to filing suit in federal court, except for Braithwaite's misclassification of rehire status claim. *See* § 633a(d).

## 1. Failure to Promote

To show disparate treatment based on age discrimination, a plaintiff "must prove that age was a determining factor in the adverse employment action that the employer took against him." *Phelps v. Yale Sec., Inc.*, 986 F.2d 1020, 1023 (6th Cir. 1993); *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000) ("When a plaintiff alleges disparate treatment, liability depends on whether . . . the plaintiff's age . . . actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome." (Internal quotations and citations omitted)).

A plaintiff may meet his burden by submitting direct or circumstantial evidence of discrimination. *Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 394 (6th Cir. 2008). Direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Id.* (internal quotation and citation omitted). Circumstantial evidence is "proof that does not on its face establish discriminatory animus, but does allow a factfinder to draw a reasonable inference that discrimination occurred." *Id.* (internal quotation and citation omitted).

Neither plaintiff presents direct evidence of discrimination, so I analyze their claims under the three-step *McDonnell Douglas* framework applied to circumstantial evidence. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 350 (6th Cir. 1998) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)).

The first step of the *McDonnell Douglas* test requires the plaintiff to establish a *prima facie* case of age discrimination by showing the plaintiff: 1) was a member of a protected class of persons, here persons forty years of age or over; 2) applied for the job but did not receive it; 3) was qualified for the position; and 4) lost the position to someone similarly situated but not in the protected class.

9

*Anthony v. BTR Auto. Sealing Sys., Inc.*, 339 F.3d 506, 515 (6th Cir. 2003). For the plaintiff to be "similarly situated" to the other employee, he need not be identical in all respects, but "must be similar in all of the relevant aspects." *Ercegovich*, *supra*, 154 F.3d at 352 (internal quotation and citation omitted).

Once the plaintiff proves a *prima facie* case, then "the burden of production shifts to the employer to articulate a legitimate nondiscriminatory reason for the adverse employment action." *Id.* at 350. "If the employer meets this burden, the burden of production shifts back to the plaintiff to show that the employer's nondiscriminatory explanation is a mere pretext for intentional age discrimination." *Id.*

To show pretext, the plaintiff must present evidence that the employer's proffered explanation either: 1) had no basis in fact; 2) did not *actually* motivate the decision; or 3) was insufficient to justify the decision. *Briggs v. Potter*, 463 F.3d 507, 515 (6th Cir. 2006). While the first and last methods of proving pretext are straightforward, the second is slightly more complex:

> [T]he plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove than an illegal motivation was *more* likely than that offered by the defendant. In other words, the plaintiff argues that the sheer weight of the circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup.

*Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *abrogated on other grounds by Gross v. FBL Fin. Servs., Inc.*, ___ U.S. ___, 129 S. Ct. 2343, 2352 (2009).

The plaintiff need not present conclusive evidence that the employer discriminated by age; he need only present "sufficient evidence for a reasonable factfinder to reject the employer's nondiscriminatory explanation." *Reeves*, *supra*, 530 U.S. at 140, 147-48.

### A. Jeffrey Braithwaite

10

Braithwaite claims that defendant denied his application to transfer to either of two vacant CASI positions at the Cleveland Airport because of his age. Braithwaite presents evidence that he is a member of the protected class, and was qualified for the positions. In arguing that he was similarly situated to those selected, Braithwaite states: "[B]oth Ricky Jones and John Hatzadony were provided employment and were likewise in job classification 1801. Therefore, both Jones and Hatzadony were similarly situated individuals who were treated differently than Plaintiff." [Doc. 35, at 47].

Defendant responds that Braithwaite does not claim to have applied for these positions, and that Braithwaite does not claim to have been "on the best qualified list." [Doc. 24, at 44].

Braithwaite fails to show he applied for the positions. He simply submits a vague email from Bartolomeo noting that "Jeff [Braithwaite] was not on the list for the CASI vacancy." [Doc. 35-23]. This is inadequate: Bartolomeo does not discuss *which* CASI vacancy is at issue or explicitly state Braithwaite applied for any positions. *Anthony*, *supra*, 339 F.3d at 515.

Even assuming Braithwaite applied for the positions, however, he has failed to show that he is similarly situated to the individuals selected, and that these individuals are not in the protected class. While Braithwaite submits transfer forms for both Jones and Hatzadony, neither form establishes that the individual received the CASI positions in question (identified in Doc. 35-13). Having failed to submit evidence of *who* filled the positions, Braithwaite cannot show he is similarly situated to these individuals. *Id.*

Braithwaite further argues that colleagues received pay raises and he did not, because of his age.

11

Defendant responds that failure to receive a raise does not rise to level of the kind of materially adverse employment action necessary to maintain a discrimination claim under the ADEA.

Braithwaite has not submitted evidence that he was qualified for a raise, that he was similarly situated to the individuals who received raises, or that those individuals were not members of the protected class. These are essential elements of an age discrimination claim. *Id.*

Defendant is thus entitled to summary judgment on Braithwaite's discriminatory failure to promote claim.

## B. Bruce Schneider

Schneider claims that defendant failed to promote him to the DFSD position at the Toledo Airport because of his age.

Defendant concedes that Schneider has some of the elements of a *prima facie* case. It contends, however, that Schneider was not similarly situated to Bartolomeo, who received the promotion. Defendant argues: "The position called for a selectee 'that has organizational, strategic thinking skills, also from a business sense the ability to have interpersonal relationships, interpersonal skills, team building  .  .  .  not only internal but also external individuals that can adapt and change to rapidly evolving situations, good analytical, verbal skill sets as well.'" [Doc. 24, at 41 (citing Doc. 24-8, at 33)]. Defendant specifically identifies Bartolomeo's work "in TSA's Transportation Security Operations Center dealing with incident management situations, [and] operational experience in an airport setting." *Id.*

Schneider points to evidence adequate to establish that he is similarly situated to Bartolomeo, who under forty and thus not in the protected class. While Schneider's background does not identically mirror Bartolomeo's, the law does not require such a showing. *Ercegovich*, *supra*, 154

12

F.3d at 352. Schneider had an extensive law enforcement background, including significant work at the Wayne County and Toledo Airports. [Doc. 24-1]. He also had management and some administrative experience. *Id.* Schneider thus clears the initial hurdle of proving a *prima facie* case.

Defendant must therefore provide a legitimate, non-discriminatory reason for promoting Bartolomeo over Schneider. *Id.* at 350.

In examining an employer's justifications for hiring a management-level employee, I must keep in mind that anti-discrimination laws do "not diminish lawful traditional management prerogatives in choosing among qualified candidates, and an employer has great flexibility in choosing a management-level employee." *Browning v. Dep't of the Army*, 436 F.3d 692, 696 (6th Cir. 2006) (internal quotation and citation omitted). The law "does not require employers to make perfect decisions, nor forbid them from making decisions that others may disagree with. Rather, [the only proscription is that] employers may not hire, fire, or promote for impermissible, discriminatory reasons." *Id.* at 698 (internal quotation and citation omitted).

Defendant states that it selected Bartolomeo over Schneider (and others) for two reasons: 1) Bartolomeo was "in FSD Young's opinion, more qualified than was Schneider" [Doc. 24, at 41]; and 2) Bartolomeo was an "outsider" *vis-a-vis* the turmoil that previously had afflicted the Toledo Airport , whereas Schneider was in the thick of the turmoil. *Id.* at 42.

As to Schneider's qualifications, defendant states, quoting Young:

He was not the best–what we felt was the top five best qualified based on diversity of job experience, as well as additional knowledge that I had personally had on several of the individuals there regarding the management inquiry and their leadership abilities.  .  .  .  I think Mr. Schneider had a very high concentration of experience in law enforcement only. The FSD job is not a law enforcement job and TSA is not a law enforcement agency. And many of the diverse skill sets which other candidates possessed in business type, running a business operation and also with the other individuals of running independent TSA operations since federalization on their own without any FSD or whatever–that their qualifications were better.

13

[Doc. 24-8, at 15-16].

With regard to the turmoil in TSA's Toledo Airport operations, defendant specifies, also quoting Young:

> The leadership of [the Toledo Airport] was basically what I would classify and the team classified as dysfunctional, even though the security operations worked well[.] . . . But the infighting that took place at the staff level amongst several individuals [including Schneider] alleviated this airport and airport operation from really collaborating and interacting with the airport operator as well as other agencies.

*Id.* at 21; *see also* Doc. 31-1 (expanding on the dysfunctional interactions of the TSA employees at the Toledo Airport).

Defendant has thus presented two legitimate, non-discriminatory rationales for preferring Bartolomeo over Schneider.

Schneider must then present evidence showing that both of these rationales are pretextual. *Ercegovich*, *supra*, 154 F.3d at 350. In attempting to do so, Schneider reiterates that he has an "outstanding resume" and an "outstanding career as a law enforcement executive." [Doc. 35, at 31]. This may be so, but such arguments speak to Schneider's initial qualification, not to whether defendant's articulated reasons are pretextual. Schneider's only on point argument is that "FSD Young's testimony at the EEOC trial in front of an administrative law judge was rejected as being 'false' and that the ALJ found that FSD Young retaliated against Bartolomeo for bring an EEOC complaint against him." [Doc. 35, at 29 (citing Doc. 35-2, at 3)].

This evidence is insufficient to show pretext for several reasons. First, character evidence is inadmissible to show propensity. Fed. R. Evid. 404(a).

Second, Schneider cites to the EEOC's summary of the ALJ's decision, but he does so incompletely. The full sentence states: "The AJ further found that *the agency's articulated reasons for its actions with respect to [a retaliation] claim were false*." [Doc. 35-2, at 3 (emphasis added)].

14

The "finding" thus regarded TSA, not Young specifically. The finding did not address the truth or falsity of Young's testimony; it merely signified that the agency had not carried its burden to present a legitimate, non-discriminatory reason for its actions towards Bartolomeo. *See* Doc. 35-3, at 28.

Schneider thus has not carried his burden to show that defendant's legitimate reasons for choosing Bartolomeo over him were pretextual.

Defendant is thus entitled to summary judgment on Schneider's claim of discriminatory failure to promote.

### 2. Failure to Transfer

To show discrimination in a failure to transfer, the plaintiff must submit evidence that: 1) he was a member of the protected class; 2) he was qualified for other available positions at the time of his termination; 3) his employer did not offer him these positions; and 4) "a similarly-situated employee who is not a member of the protected class was offered the opportunity to transfer into an available position, or other direct, indirect, or circumstantial evidence supporting an inference of discrimination." *Ercegovich*, *supra*, 154 F.3d at 351. For the plaintiff to be "similarly situated" to the other employee, he need not be identical in all respects, but "must be similar in all of the relevant aspects." *Id.* at 352 (internal quotation and citation omitted).

Once the plaintiff does so, the parties progress through the rest of the *McDonnell Douglas* burden shifting analysis. *Id.* at 350.

### A. Jeffrey Braithwaite[7]

---

[7] It is unclear how Braithwaite's failure to promote and failure to transfer claims differ. Defendant presents its interpretation: Braithwaite "conflates his nonselection claim (to the ASI position) with his failure to transfer claim (into an open FSD position at CLE)." [Doc. 38, at 8 n.7]. This interpretation, however, appears to contrast with Braithwaite's intended argument. *See* Doc. 24-20, at 2-5 (indicating that the ASI positions form the basis of both Braithwaite's failure to promote and failure to transfer claims).

Braithwaite argues that defendant did not transfer him to a vacant position, in light of his impending termination, because of his age. In support of this argument, Braithwaite again states: "[S]imilar[ly] situated individuals, Ricky Jones and John Hatzadony were accommodated, were transferred, without the need of posting for positions or qualifying for positions. Michael Young had the authority to transfer individuals within his manpower allocation, to reclassify positions and to do what he wanted to do." [Doc. 35, at 43].

Defendant responds that Braithwaite failed to show he was qualified for a transfer or that a similarly situated employee not in the protected class received such a transfer. Defendant protests, moreover, that Braithwaite was not entitled to a transfer.

Employees to be terminated in the RIF were not entitled to transfers and had to meet the qualifications to transfer at all. [Doc. 35-29, at 5, 7, 9]. Even assuming that this is not fatal to his claim, and that he was qualified for a transfer, Braithwaite does not show that he was similarly situated to Jones or Hatzadony, and that they were not members of the protected class. *Ercegovich*, *supra*, 154 F.3d at 351.

Braithwaite thus fails to prove a prima facie case of discriminatory failure to transfer.

### B. Bruce Schneider

Schneider also argues that defendant did not transfer him to a vacant position because of his age. Schneider, in his deposition, identified the general categories of "Program Analyst" and "Regulatory Agent" as positions to which he believed he was entitled to a transfer. [Doc. 24-16, at 20-21].

Defendant responds that Schneider has not shown that he was qualified for the positions. Defendant further notes that no displaced employees were entitled to transfers.

Defendant is correct. Employees to be terminated in the RIF were not entitled to transfers and had to meet the qualifications of the new position to transfer. [Doc. 35-29, at 5, 7, 9]. Schneider, moreover, has not pointed to any *particular* vacancies in these positions, and acknowledged in his deposition that he did not apply for (or request transfer to) the positions. [Doc. 24-16, at 20-22 (Q: "Is it your testimony then that the TSA should have come to you unilaterally without an application and said do you want this job?" A: "Yes.")]; *see Ercegovich*, *supra*, 154 F.3d at 351. As defendant points out, Schneider also has not adequately presented evidence that he was qualified for these particular positions. *Ercegovich*, *supra*, 154 F.3d at 351. He, finally, has not shown that he is similarly situated to any individuals who were offered such transfers but were not in the protected class. *Id.*

Defendant is thus entitled to summary judgment on Schneider's discriminatory failure to transfer claim.

### 3. Reduction of Duties

Plaintiffs state:

> The Plaintiffs will not claim separate causes of action relating to the removal of their duties and responsibilities, but reserves [sic] the right to put forth this evidence at trial as their evidence of retaliatory motive and retaliatory actions for filing an EEOC complaint. Plaintiffs are not abandoning their position that the removal of their duties and responsibilities constitute an adverse employment action.

[Doc. 35, at 40].[8]

To survive summary judgment, plaintiffs must submit evidence showing a material issue of genuine fact as to each of their claims, including their discriminatory removal of duties claim. *Parsons v. FedEx Corp.*, 2010 WL 26473, at *3 (6th Cir.) (unpublished disposition) ("A district

---

[8] While discussed above as a retaliation claim, I also consider it as a claim for discrimination because of the vagueness of plaintiffs' contentions.

court need only consider the evidence presented to it when considering a motion for summary judgment, regardless of whether other potentially relevant evidence exists somewhere in the record." (citing *Williamson v. Aetna Life Ins. Co.*, 481 F.3d 369, 379 (6th Cir. 2007))).

Plaintiffs do not do so, so defendant is entitled to summary judgment on this claim.[9]

### 4. RIF Termination

The Sixth Circuit defines a "workforce reduction" as a situation where "business considerations cause an employer to eliminate one or more positions within the company." *Barnes v. Gencorp., Inc.*, 896 F.2d 1457, 1465 (6th Cir. 1990). In the context of a RIF, a plaintiff alleging improper termination based on age discrimination must initially show that: 1) he was a member of the protected class; 2) he was qualified for the job; 3) his employer discharged him; and 4) "additional direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Id.*

Once the plaintiff does so, the parties progress through the rest of the *McDonnell Douglas* burden shifting analysis. *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004).

Plaintiffs appear to concede their discriminatory termination claims, as well as their retaliatory termination claims. *See* Doc. 35, at 36-39. Their apparent concession as to their termination claims is not, however, as clear as with the retaliatory termination claims. *See* II.2, *infra*. As regards their discriminatory termination claims, plaintiffs only state, summarily: "Plaintiffs[,] however, are able to present to the court overwhelming and uncontroverted facts and circumstantial evidence of discrimination and retaliation by Young acting on behalf of the Defendant." [Doc. 35,

---

[9] For the same reasons, defendant's motion for summary judgment on plaintiffs' claim for retaliatory reduction of duties is also granted.

at 39]. Plaintiffs do not, however, point to any particular evidence demonstrating that defendant singled plaintiffs out for termination for impermissible reasons. Plaintiffs must do so to survive summary judgment. *Williamson*, *supra*, 481 F.3d at 379.

Defendant is thus entitled to summary judgment on plaintiffs' discriminatory termination claims.

## II. Retaliation

Plaintiffs also allege that defendant improperly retaliated against them for filing EEO complaints based on age discrimination.

The ADEA states:

> It shall be unlawful for an employer to discriminate against any of his employees or applicants for employment, for an employment agency to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because such individual, member or applicant for membership has opposed any practice made unlawful by this section, or because such individual, member or applicant for membership has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under this Act.

29 U.S.C. § 623(d).

While this language does not appear in the ADEA section explicitly discussing federal employees, see § 633a, the Supreme Court has held that a federal employee may sue under § 633a for retaliation. *Gomez-Perez*, *supra*, 128 S. Ct. at 1942-43; *see also* 29 C.F.R. § 1614.101(b). In so deciding, the Court clarified that the United States government has waived sovereign immunity as to these claims also. *Gomez-Perez*, *supra*, 128 S. Ct. at 1942-43.

As with their discrimination claims, plaintiffs may prove a retaliation claim using either direct or circumstantial evidence. *Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543-44 (6th

Cir. 2008). Plaintiffs do not submit direct evidence of retaliation, so I examine their circumstantial evidence using the *McDonnell Douglas* burden shifting framework. *Id.*

To prove retaliation under the ADEA, the plaintiff must show that: 1) he engaged in ADEA-protected activity; 2) the defendant knew of this activity; 3) the defendant subsequently took adverse employment action against the plaintiff; and 4) there was a causal connection between the plaintiff's protected activity and the adverse employment action. *Id.* at 544.

Once the plaintiff does so, the parties progress through the rest of the *McDonnell Douglas* burden shifting analysis, and the same three possible methods of showing pretext apply as in the discrimination context. *Id.* at 544-45. The plaintiff, however, must "prove not only that the defendant's proffered reason was a pretext, but that the real reason for the employer's action was intentional retaliation." *Id.* at 544. As discussed above, nonetheless, the Supreme Court has held that the factfinder may infer as much from "the falsity of the employer's explanation." *Reeves*, *supra*, 530 U.S. at 147; *see also Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003) (internal citation omitted).

## 1. Failure to Transfer

### A. Jeffrey Braithwaite

Braithwaite argues that Young retaliated against him for filing an age discrimination complaint by refusing to transfer him to an open position.

Defendant responds that Braithwaite has not engaged in ADEA-protected activity.

Defendant is incorrect. Braithwaite contacted an EEO counselor on March 6, 2006, and filed a formal complaint by June, 2006. [Doc. 24-6]. He thus engaged in protected activity. *See* § 623(d). He also presents evidence that Young knew of this complaint. This leaves solely the issues of adverse employment action and causation. *Imwalle*, *supra*, 515 F.3d at 544.

20

The Supreme Court has defined an "adverse employment action[]" as one that would "dissuade[] a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006); *see also Hunter v. Sec'y of U.S. Army*, 565 F.3d 986, 996 (6th Cir. 2009). In *Hunter*, the Sixth Circuit held that certain actions do not rise to the level of adverse employment action: 1) briefly interrupting the employee's duties; 2) transferring the employee to a new unit without any shown harm; 3) requiring of an employee action required of other employees; and 4) a single, isolated insult. 565 F.3d at 996. Unlike these minimal inconveniences, denying an employee continued employment by not transferring him, as here, rises to the level of adverse employment action.

Noting that denying Braithwaite a transfer *could* constitute adverse employment action, however, does not end the inquiry. Braithwaite must present evidence sufficient to show a genuine issue of material fact that defendant actually *did* refuse to transfer him to a position for which he was qualified. *See, e.g.*, *Benedict v. Eau Claire Pub. Sch.*, 1998 WL 60374, at *3 (7th Cir.) (unpublished disposition) (describing the plaintiff's denied applications for transfers to specific positions).

This is where Braithwaite's claim fails. As noted above in §§ I.1.A and I.2.A, *supra*, Braithwaite does not advance evidence showing he actually requested a transfer. The evidence he claims shows his application for a CASI position – Bartolomeo's inclusion of his name and the position in an inquiry email to other managers [Doc. 35-23] – does not establish that he actually *applied* for a transfer.[10] Even were Bartolomeo's passing comment about Braithwaite adequate to show Braithwaite applied for a CASI position somewhere, the fact that Bartolomeo's comment is so vague prevents Braithwaite from showing any sort of causal link between an unidentified CASI

---

[10] Bartolomeo further testified in his deposition that he assisted Braithwaite in seeking positions, but could not recall any specific positions. [Doc. 35-9, at 21-22].

position and Braithwaite's denial of transfer to that position. *Imwalle*, *supra*, 515 F.3d at 544.

Braithwaite, moreover, points to three specific vacancies [Doc. 24-21; Doc. 35-30, at 3], which advertise distinct positions (two "Transportation Security Specialist: CASI" and one "Cargo Transportation Security Specialist"), but he does not show that the former two were not filled before the date of his EEO contact, in which case his transfer denial could not constitute retaliation. He further fails to show that he was qualified for any of the three positions, besides claiming that "attend[ing] the ASI Security Academy" was adequate. [Doc. 35, at 37].

Braithwaite also cannot establish a causal connection, because of: 1) his inability to point to any particular denial of transfer and link Young to that denial; and 2) his reliance on solely vague hearsay testimony that Young did not like EEOC action and, in plaintiffs' words, had a "propensity to discriminate against people who dared to file an EEO claim against him or the agency." [Doc. 35, at 44]. Such testimony is inadmissible and cannot support a retaliation claim. Fed. R. Evid. 404(a); *see also Arendale v. City of Memphis*, 519 F.3d 587, 607 (6th Cir. 2008) ("Plaintiff's retaliation claim also fails because Plaintiff relies almost entirely on inadmissible hearsay evidence in support of this claim."). Braithwaite has thus not shown a *prima facie* case of retaliatory failure to transfer. *Imwalle*, *supra*, 515 F.3d at 544.

Defendant is thus entitled to summary judgment on Braithwaite's retaliatory failure to transfer claim.

### B. Bruce Schneider

Schneider alleges that Young retaliated against him for filing an age discrimination complaint by refusing to transfer Schneider to an open position.

Defendant concedes that Schneider has established the first three elements of a retaliation

claim, but argues that Schneider has not demonstrated a causal connection between his non-transfer and the filing of his EEOC complaint.

Defendant is correct. Like Braithwaite, Schneider cannot establish a causal connection because of: 1) his inability to point to any particular denial of transfer and link Young to that denial; and 2) his reliance on solely vague hearsay testimony that Young did not like EEOC action and, in plaintiffs' words, had a "propensity to discriminate against people who dared to file an EEO claim against him or the agency." [Doc. 35, at 44]. Such testimony is inadmissible and cannot support a retaliation claim. *Arendale*, *supra*, 519 F.3d at 607 (6th Cir. 2008).

Without showing causal connection, Schneider's retaliatory failure to transfer claim must fail. *Imwalle*, *supra*, 515 F.3d at 544.

Defendant is thus entitled to summary judgment on Schneider's retaliatory failure to transfer claim.

### 2. Termination

Plaintiffs concede:

> The retaliation in this particular case is not that Plaintiffs Schneider and Braithwaite were selected to have their jobs eliminated[;] Plaintiffs concede that their positions were part of management's decision to cut back on redundant staff. The retaliation which the Plaintiffs allege is  .   .  . [defendant's] refus[al] to transfer them to jobs which were open and for which they were qualified[.]

[Doc. 35, at 37].

Plaintiffs have thus dropped their retaliatory termination claims, and these claims shall be dismissed.

### 3. Misclassification of Rehire Status

Braithwaite alone brings a claim for retaliatory misclassification of rehire status. He, however, concedes that he did not file an EEO complaint as to this allegation. Because he did not

23

do so, Braithwaite acknowledges that he has not satisfied the prerequisites to filing an ADEA retaliation claim on this point. [Doc. 35, at 39].

Braithwaite's retaliatory misclassification of rehire status claim is thus dismissed.

### Conclusion

For the foregoing reasons, it is hereby:

ORDERED THAT defendant's motion for summary judgment [Doc. 24] be, and the same hereby is, granted.

So ordered.

s/James G. Carr
James G. Carr
Chief Judge